IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER BAILEY, #R71263, <br><br>              Plaintiff,<br><br>v.<br><br>ROB JEFFREYS,<br>CECIL THOMAS HOLT,<br>SARAH BROWN-FOILES,<br>JESSICA STAVER,<br>HEATHER WRIGHT,<br>DANIEL Q. SULLIVAN,<br>RICHARD MORGENTHALER,<br>STEPHANIE WAGGONER,<br>TONY BUTLER,<br>SHANE TASKY,<br>DAVID HERMETZ,<br>KIMBERLY WHARTON,<br>MICHAEL HARRIS,<br>PATTY SNEED, and<br>CLARK,<br><br>              Defendants. | Case No. 21-cv-00013-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Christopher Bailey, who is civilly committed at Big Muddy Correctional Center as a sexually dangerous person ("SDP"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Bailey claims that he was wrongfully written a disciplinary ticket and punished with segregation for refusing to participate in the SDP treatment program. While in segregation, he was held in unconstitutional conditions and assaulted by a correctional officer, which led to another false disciplinary ticket and more punitive segregation time. Bailey seeks monetary damages and declaratory and injunctive relief.

      The case is now before the Court for preliminary review of the Complaint pursuant to 28

U.S.C. § 1915A. As a civilly committed SDP under the Illinois Sexually Dangerous Persons Act, 725 ILCS 205/1.01, Bailey is subject to the Prison Litigation Reform Act, 28 U.S.C. § 1915 *et seq*. *See Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004). Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT[1]

Bailey alleges the following: For years, Bailey has had disagreements with the SDP treatment staff, including Dr. Holt, regarding his right to refuse and not be part of the SDP treatment program. (Doc. 1, p. 14, 24). On January 10, 2019, after standing up to Dr. Holt's abuse of power and refusing to have anything to do with the SDP treatment program, Bailey was placed in segregation for refusing treatment. (*Id.*). Dr. Holt wrote Bailey a disciplinary ticket, and Adjustment Committee Members Tony Butler and Shane Tasky found Bailey guilty of three of the five charges. (*Id.* at p. 24, 35). He was sanctioned to three months segregation and three months C grade status. (*Id.* at p. 35). Warden Daniel Sullivan concurred in the guilty finding and recommended disciplinary action.

After being placed in segregation, Bailey was assaulted by Lieutenant Kimberly Wharton, while he was handcuffed in his cell. (Doc. 1, p. 16, 26; Doc. 1-1, p. 7). In self-defense, Baily kicked Wharton in the lower abdomen. (Doc. 1-1, p. 7). Sergeant Michael Harris was present at the

---

[1] Because it appears that Bailey is relying on statements made in the Complaint and attached exhibits in asserting his claims, the Court is construing the allegations in all of these pleadings together. *See Otis v. Demarass,* 886 F.3d 639, 644 (7th Cir. 2018).

incident and wrote Bailey a disciplinary ticket for assault in order to cover up his inaction and Wharton's use of excessive force. The ticket was heard by the Adjustment Committee, composed of Tony Butler and David Hermetz, on March 5, 2019, and Bailey was found guilty. Bailey was not given a fair hearing and was not allowed to make a statement in his own defense. He was threatened by Butler and then sent back to his cell. (*Id.*). Bailey was sanctioned with one year in segregation, six months contact visits restriction, and one year segregation yard restriction. (Doc. 1, p. 64). Warden Sullivan again approved the guilty finding and recommended disciplinary action. (*Id.* at p. 65).

Bailey then filed several grievances, letters, and notified staff verbally about the false allegation that he assaulted staff, and the conduct of Butler and Hermetz, who unjustifiably found him guilty. (Doc. 1, p.16-17, 28). Bailey did not receive responses to his complaints or when he did receive responses from grievance officials, they were vague or untruthful. (Doc. 1-1, p. 8).

In July 2019, Bailey went on a hunger strike and sent a declaration to officials outlining the reasons for the hunger strike and demanding that he, Harris, and Wharton be subjected to polygraph tests. (Doc. 1, p. 17; Doc. 1-1, p. 7-8). The hunger strike only lasted ten days because he had health concerns and because Bailey was told by Big Muddy staff that IDOC administration staff in Springfield, IL, would not be alerted or notified of his unjustified guilty charge for assault. (Doc. 1, p. 17, 27). On August 12, 2019, Bailey was placed on crisis watch after he attempted to commit suicide. Bailey's treatment on crisis watch was deplorable and inhumane. (*Id.* at p. 18).

After returning to segregation from crisis watch, Bailey began speaking with staff about rejoining "the program" and receiving treatment again. (Doc. 1, p. 18). It was made clear to him by staff that SDP detainees in segregation are not allowed to be a part of the SDP treatment program and cannot receive SDP treatment while in segregation. Staff also told him that he would not be allowed to rejoin the program or receive treatment until he was removed from segregation.

(*Id.*). The staff members were unwilling to make any effort to help Bailey obtain early release from segregation so that he could receive treatment.

During his time in segregation, Bailey was subjected to punitive, deplorable, inhumane, oppressive, and degrading conditions. (Doc. 1, p. 18). Bailey experienced sleep deprivation because the other inmates in segregation would scream, sing, and beat and kick doors, sinks, and windows all day and night. (*Id.* at p. 19). Specifically, for a significant amount of time, Bailey was celled across from a severely mentally ill person, who could see right into Bailey's cell and would make sexually harassing comments and threats. (*Id.* at p. 18). For stretches of time, this other inmate would be quiet, but more often than not, he would beat on his cell door and repeatedly scream different phrases for hours. (*Id.* at p. 18-19). Bailey was harassed by guards and especially other inmates. He was not allowed to use the telephone and denied access to email. Bailey had very limited opportunities to socialize with others. (*Id.* at p. 19).

Bailey also had difficulty sleeping because he had an uncomfortable mattress and pillow and the extreme temperatures in his cell. The cells in segregation have poor ventilation so they become too hot in the summer and too cold in the winter. The vents often blow room temperature air or do not function at all. (*Id.*) In the summer, Bailey was not allowed to have his fan. (*Id.* at p. 20). In the cold months, Bailey was not given seasonal clothing, such as thermals or sweaters. (*Id.* at p. 19). He was also not provided extra blankets. Often, there is no hot water in the cells or segregation showers. The inmates in segregation were repeatedly told that the "boilers were down." (*Id.*). When hot water is available in the showers, the water "will always cool down fast and then fluctuate from moment to moment from tepid to outright cold." (*Id.* at p. 19-20).

Bailey was denied "out-of-cell" recreation time, his monthly state pay stipend, and law library access. (Doc. 1, p. 20). Writing supplies and nonlegal envelopes are also not provided to all indigent inmates, even those not in segregation, except for cheap "flexipens." The lack of

nonlegal envelopes and writing supplies hindered his ability to maintain communication with the few people he has contact with in the outside world, which is important to his mental health. (*Id.* at p. 20-21).

After his release from segregation, Bailey had no further conflict with the SDP staff or the program until his cell was shaken down on June 17, 2020. The correctional officer who shook down his cell confiscated a number of items. The property was deemed contraband and disposed of by SDP staff without any legal authority. (Doc. 1, p. 31-32).

### PRELIMINARY DISMISSALS

Bailey asserts allegations against Shelton and Hoxworth in the Complaint, but these individual are not named in the case caption as defendants. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

> **Count 1:** Fourteenth Amendment claim against Dr. Holt, Brown-Foiles, Staver, Wright, and Sullivan for violating Bailey's right to refuse treatment.
>
> **Count 2:** First Amendment claim against Dr. Holt for issuing Bailey a disciplinary ticket and placing him in segregation in retaliation for refusing treatment.
>
> **Count 3:** Fourteenth Amendment claim against Dr. Holt, Butler, Tasky, and Sullivan for depriving Bailey of a protected liberty interest without due process of law in connection with the first disciplinary ticket issued on January 10, 2019.
>
> **Count 4:** Fourteenth Amendment claim against Harris, Butler, Hermetz, Sullivan, Clark, and Morgenthaler for depriving Bailey of a

protective liberty interest without due process of law in connection with the second disciplinary ticket issued on March 2, 2019.

**Count 5:** Fourteenth Amendment claim against Wharton for the use of excessive force against Bailey.

**Count 6:** Fourteenth Amendment claim against Harris and Sullivan for failing to intervene and protect Bailey from assault by Wharton.

**Count 7:** Fourteenth Amendment claim against Jeffreys for subjecting Bailey to inhuman conditions of confinement while in segregation.

**Count 8:** Fourteenth Amendment claim against Sneed for the mishandling of Bailey's grievances.

**Count 9:** Fourteenth Amendment claim against Brown-Foiles, Staver, and Wright for the confiscation and withholding of Bailey's property.

**Count 10:** Fourteenth Amendment claim against Brown-Foiles, Staver, and Wright for denying Bailey treatment while he was in segregation.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### Count 1

The Supreme Court has recognized that a competent person has a constitutional right under the Fourteenth Amendment to refuse unwanted medical care. *See Cruzan v. Dir., Mo., Dep't of Health,* 497 U.S. 267, 278 (1990). *See also Estate of Allen v. City of Rockford,* 349 F. 3d 1015, 1020-21 (7th Cir. 2003) (distinguishing between a competent person and an incompetent person when considering the right to refuse treatment).

Bailey claims that his right to refuse treatment was violated by Dr. Holt who forced him to

participate in unwanted treatment by punishing him with disciplinary proceedings and segregation when he refused treatment and instructing staff to "enforce treatment specific policies" on him. (Doc. 1, p. 9). His claims are sufficient for Count 1 to proceed against Dr. Holt.

Count 1 will be dismissed, however, as to Brown-Foiles, the acting administrator of the SDP program, Staver, Wright, and Warden Sullivan. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Bailey states that he wrote a letter to Warden Sullivan detailing how his right to refuse treatment had been violated. (Doc. 1, p.15, 56). However, Bailey wrote this letter to Sullivan on June 19, 2019, after he was transferred to segregation and no longer receiving treatment pursuant to the SDP program. Thus, Sullivan could not have been involved in the alleged constitutional violation of his right to refuse treatment.

As for Brown-Foiles, Staver, and Wright, Bailey asserts that they violated his rights by "forcing unwanted treatment against me." (Doc. 1, p. 10). This conclusory allegation, without any supporting factual details alleging personal involvement in his care, is not sufficient to state a claim. *See Brooks v. Ross*, 578 F.3d 574, 581(7th Cir. 2009).

**Count 2**

To state a First Amendment retaliation claim, a plaintiff must plead that he engaged in protected First Amendment activity, an adverse action was taken against him, and his protected conduct was at least a motivating factor of the adverse action. *Holleman v. Zatecky,* 951 F. 3d 873, 878 (7th Cir. 2020).

Bailey claims that Dr. Holt retaliated against him by placing him in segregation for "outright refusing to have anything to do with the SDP treatment program," and then informing other SDP detainees that they have a right to refuse treatment. (Doc. 1, p. 9). Bailey's speech,

refusing medical treatment and speaking to other detainees about their rights, may be the sort protected by the First Amendment, and so, Count 2 will proceed against Dr. Holt. *See Johnson v. Conway,* No. 13-cv-0524-RWS, 2013 WL 5493380, at *4 (N.D. Ga., Sept. 30, 2013) (finding that the plaintiff stated a plausible claim asserting that the defendants acted in retaliation against him for refusing medical treatment). *But see Lisey v. Hand-Ronga,* No. 17-cv-01704, 2019 WL 5719393, at *6 (E.D. Cal. Nov. 5, 2019) (noting that "this court has not found any binding authority deciding that refusal of medical treatment constitutes a protective activity for a First Amendment retaliation claim"), *mag. report and recomm. adopted by* 2019 WL 6127473, (E.D. Cal. Nov. 19, 2019); *Langford v. Prima,* No. 17-cv-11862, 2018 WL 659247, at *5 (E.D. Mich. Feb. 1, 2018) ("refusal of medical treatment is not protected conduct for the purposes of a First Amendment retaliation claim"); *Carter v. Ayala,* No. 13-cv-0807, 2014 WL 4660320, at *2 (W.D. Mich. Sept. 17, 2014) (holding that the plaintiff "cannot stretch right to refusal of treatment under the Fourteenth Amendment's Due Process Clause into a First Amendment retaliation claim").

**Counts 3 and 4**

"[A]lthough it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection," such as notice and a hearing. *Rapier v. Harris,* 172 F. 3d 999, 1005 (7th Cir. 1999). *See also Higgs v. Carver,* 286 F. 3d 437, 438-39 (7th Cir. 2002).

Bailey alleges he was not provided procedural protections prior to being placed in punitive segregation, he was written a pretextual disciplinary ticket and not allowed to present evidence at the disciplinary hearing, before being found guilty and punished with three months in segregation on January 15, 2019. At this stage, Count 3 will proceed against those involved in his discipline, Dr. Holt, Butler, Tasky, and Sullivan.

As to the second disciplinary ticket and disciplinary proceeding, Bailey alleges he was

written a false disciplinary ticket and not allowed to present a statement at the hearing held on March 5, 2019, before being punished with a year in segregation. At this stage, Count 4 will proceed against Harris, Butler, Hermetz, and Sullivan based on their alleged involvement in his discipline.

Count 4 will be dismissed, however, against Clark and Morgenthaler. Bailey alleges that after the assault and conviction he wrote twice to Lieutenant Clark, the head of Internal Affairs, regarding his alleged staff assault and unjustifiable guilty verdict. (Doc. 1, p. 17). He argues that Clark violated his constitutional rights by failing to investigate and address the misconduct by Dr. Holt, Staver, Wright, Sullivan, Morgenthaler, Waggoner, Butler, Tasky, Hermetz, Wharton, and Harris. (*Id.* at p. 12). Bailey states that Defendants' conduct falls under Clark's purview and investigative authority.

Similarly, Bailey claims that he also wrote the Assistant Warden of Operations, Richard Morgenthaler, about his guilty verdict on July 25, 2019. (Doc. 1, p. 28). He asserts that Morgenthaler violated his rights by allowing him to be subjected to unwanted treatment and failed to intervene when "those under his authority violated [Bailey's] rights" (*Id.* at p. 10). Bailey also states he was told by Morgenthaler that IDOC officials in Springfield would not be notified about the situation regarding the staff assault against Bailey, the unjustified guilty verdict ,and subsequent punishment by the Adjustment Committee. (*Id.* at p. 27-28).

The Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *See Jones v. Linn,* No. 19-cv-01307-SMY, 2020 WL 7342694, at *5 (S.D. Ill. Dec. 14, 2020) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)). Therefore, prison official incur no liability under Section 1983 if they fail or refuse to investigate a detainee's complaints or grievances. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL

120951, at *6 (S.D. Ill. Jan. 12, 2017); *Wilkins v. Illinois Dep't of Corr*. No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009). There is also no supervisory liability or vicarious liability under Section 1983. *Brown v. Peters,* 940 F. 3d 932, 937 (7th Cir. 2019).

Bailey does not assert any involvement by Clark or Morgenthaler in the disciplinary ticket, the disciplinary proceedings, or the subsequent implementation of punishment. Accordingly, he has not stated a claim against Clark or Morgenthaler for failing to investigate, report, or correct staff conduct after the disciplinary hearing had been held, and Bailey was found guilty and sanctioned. Count 4 is dismissed as to Clark and Morgenthaler.

### Count 5

The Fourteenth Amendment's due process clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). To prove that force was excessive, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* The Complaint sets forth sufficient allegations at the screening stage for Count 5 to proceed against Wharton.

### Count 6

Bailey asserts that Harris stood and watched and failed to intervene when Wharton assaulted him. This is sufficient for Count 6 to proceed against Harris. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (liability for failure to intervene requires that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it").

Count 6 is dismissed as to Warden Sullivan. Bailey makes the conclusory statement that Sullivan failed to protect him from assault by Wharton. He offers no other details. There are no allegations that Sullivan was aware of a risk of assault or that Sullivan had a realistic opportunity to prevent the assault before it occurred. Additionally, the mere fact that Sullivan is the Warden of

Big Muddy and in a supervisory role, does not establish liability. As mentioned, the doctrine of *respondeat superior,* also known as supervisor liability, does not apply to actions filed pursuant to Section 1983. Thus, Count 6 is dismissed as to Warden Sullivan.

### Count 7

To state a claim under the Fourteenth Amendment for unconstitutional conditions of confinement, a pretrial detainee must set forth facts suggesting that each defendant "acted purposefully, knowingly, or perhaps even recklessly" in response to conditions posing an excessive risk to his health or safety and that the defendant's actions were "objectively unreasonable." *Hardeman v. Curran,* 933 F. 3d 816, 823 (7th Cir. 2019). *See also Bell v Dart,* 807 F. App'x 562, 564 (7th Cir. 2020).

Bailey's claims regarding his conditions of confinement while in segregation must be dismissed. The only defendant he associates with these allegations is IDOC Director Rob Jeffreys. Bailey claims that Jeffreys failed to provide him with a safe and secure living environment and that he was subjected to a prolonged period of punitive segregation in dehumanizing conditions because Jeffreys did not adequately train and supervise IDOC staff "in order to prevent the violations." (Doc. 1, p. 9). He further asserts that Jeffreys failed to intervene as his court appointed guardian.

Bailey has failed to assert that Jeffreys knew or was aware (1) of unconstitutional conduct on the part of IDOC staff; (2) that Bailey was housed in unlawful punitive segregation; or (3) was being held in "dehumanizing conditions," and then Jeffreys acted unreasonably regarding these conditions. As discussed above, Jeffreys cannot be held liable simply because he is the Director of IDOC. He must somehow be personally involved in the alleged violation. Additionally, although Illinois state law provides that "[t]he Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recover," 725 ILCS 205/8, violation

of a state law, in and of itself, does not violate the constitution. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (explaining that Section 1983 "protects plaintiffs from constitutional violations, not violations of state law or ... departmental regulations"). Thus, Count 7 is dismissed without prejudice.

### Count 8

Bailey claims that Patty Sneed violated his rights by repeatedly improperly handling and processing his grievances. (Doc. 1 , p. 11).

"Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [Bailey's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Daniel v. Cook Cty.,* 833 F. 3d 728 (7th Cir. 2016). As such, there is no viable claim against Sneed, and Count 8 is dismissed.

### Count 9

Bailey's claims that his property was unlawfully confiscated and withheld from him are also dismissed. To state a property loss claim under the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property without due process of law. However, if the state provides an adequate remedy, the plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). In that vein, Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 Ill. Comp. Stat. 505/8 (1995). Thus, Bailey must pursue any claims for the loss of his property in the Illinois Court of Claims. Count 9 will be dismissed with prejudice from this action.

## Count 10

Bailey claims that after being placed in segregation, he began talking and writing to the SDP staff requesting to rejoin the program and receive the treatment provided. (Doc. 1, p. 29). It was "made clear to him" that he would not be allowed to take part in the program or receive treatment until he was released from segregation. Bailey asserts that Brown-Foiles, Staver, and Wright refused to allow him to receive treatment after he made these requests while in segregation. (*Id.* at p. 10).

Bailey asserts that he had periodic disagreements with staff for years regarding his right to refuse treatment prior to January 2019 when Dr. Holt issued Bailey the disciplinary ticket. While the Due Process Clause does protect the right to refuse treatment, courts have held that a plaintiff "cannot refuse treatment and food and then complain that defendants were deliberately indifference to medical and nutritional needs." *Hahn v. Walsh,* 915 F. Supp. 2d 925, 953 (C.D. Ill. Mar. 14, 2013) (collecting cases). Because Bailey asserts that his right to refuse treatment was repeatedly violated, he may not proceed on a subsequent constitutional claim against Defendants for acting objectively unreasonable by subsequently denying him treatment while he was in segregation. *See Miranda v. Cty. of Lake,* 900 F.3d 335, 351-52 (7th Cir. 2018) ("medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to [an] objective unreasonableness inquiry"). Count 10 is dismissed.

## MOTION FOR RECRUITMENT OF COUNSEL

Bailey has filed a motion for recruitment of counsel (Doc. 3), which is **DENIED.**[2] He discloses three unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability

---

[2] In evaluating the motion for recruitment of counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

to pursue this action pro se, Bailey indicates that he is a layman and has limited knowledge of the law. He also states that his incarceration and limited law library access will hinder his ability to investigate his claims and conduct research. Finally, Bailey argues that when his case reaches trial, counsel would be better equipped to present evidence and cross examine witnesses. Nonetheless, the Court finds that Bailey is capable of proceeding pro se se, at least for now. He has some college education, and his pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Bailey appears competent to try this matter without representation at this early stage in the case. Once discovery has commenced, if Bailey has significant difficulty, he may refile his motion.

### PRELIMINARY AND PERMANENT INJUNCTION

Bailey asks for preliminary and permanent injunctions ordering Defendants to "stop forcing unwanted treatment against" him. (Doc. 1-1, p. 32).

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 770 (7th Cir. 2001). In order to obtain preliminary injunctive relief, Bailey must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). Bailey's request fails to meet any of these requirements. Notably, he has not shown how he is at risk of irreparable harm or how the injunction would preserve the status quo until the Court can rule on the merits of the case. Specifically, he alleges that once released from segregation "he had no further conflict with the SDP staff or the program," other than the shakedown of his cell on June 17, 2020. (Doc. 1, p. 31). Furthermore, Bailey has not filed a separate motion for his preliminary injunction pursuant to Federal Rules of Civil Procedure 7 and 65. For these reasons, the request for a preliminary injunction is **DENIED.**

Bailey also seeks injunctive relief and claims he is suing Defendants in "their personal and professional capacities." (Doc. 1, p.12). To the extent that Bailey is seeking monetary damages, he cannot pursue official capacity claims against any of the individual defendants. *See Brown v. Budz*, 398 F.3d 9044, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages). To the extent that Bailey is seeking injunctive relief (Doc. 1, p. 30), the current Warden of Big Muddy is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, Counts 1-6 will proceed against the individual defendants in their individual capacities only; all intended official capacity claims against these individuals will be dismissed without prejudice. Additionally, the current Warden of Big Muddy, in his official capacity, will be added to the docket to carry out any injunctive relief that might be ordered.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Holt but is **DISMISSED** as to Brown-Foiles, Staver, Wright, and Sullivan. **COUNT 2** will proceed against Holt. **COUNT 3** will proceed against Holt, Butler, Tasky, and Sullivan. **COUNT 4** will proceed against Harris, Butler, Hermetz, and Sullivan but is **DISMISSED** as to Clark and Morgenthaler. **Count 5** will proceed against Wharton. **COUNT 6** will proceed against Harris but is **DISMISSED** as to Sullivan. **COUNTS 7, 8, 9**, and **10** are **DISMISSED.** The Clerk of Court is **DIRECTED** to **ADD** the current Warden of Big Muddy Correctional Center as a defendant, in his or her official capacity only, for the purpose of implementing any injunctive relief that may be ordered.

Because there are no surviving claims against Jeffreys, Brown-Foiles, Staver, Wright, Morgenthaler, Waggoner, Sneed, and Clark, these defendants are **DISMISSED,** and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties in the docket.

The motion for recruitment of counsel (Doc. 3) is **DENIED without prejudice**. The request for a preliminary injunction (Doc. 1-1, p. 32) is also **DENIED.**

Because Bailey's claims involve the alleged denial of medical care, the Clerk of Court is further **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for **Holt, Butler, Tasky, Sullivan, Harris, Hermetz, Wharton,** and **the Warden of Big Muddy** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Bailey, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Bailey, and the judgment includes the payment of costs

under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Bailey is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b)

**IT IS SO ORDERED.**

**DATED:   September 29, 2021**

                                                  *s/Stephen P. McGlynn*
                                                  **STEPHEN P. MCGLYNN**
                                                  **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.